UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JASON L. JACKSON, | ) |
| Petitioner, | ) ) ) |
| v. | ) Case No. 20-1081-MMM |
| FRANK LAWRENCE, | ) ) ) |
| Respondent. | ) ) |

## MEMORANDUM OPINION & ORDER

The matter presently before the Court is Jason L Jackson's ("Petitioner") Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (D. 1) and Frank Lawrence's ("Respondent") Motion to Dismiss Petitioner's Unexhausted Habeas Petition (D. 6). For the reasons set forth herein, Respondent's Motion to Dismiss is GRANTED, and Petitioner's Petition for Writ of Habeas Corpus is DISMISSED WITHOUT PREJUDICE.

### BACKGROUND

In October 2002, the Petitioner was convicted of attempted first-degree murder and unlawful possession of a weapon by a felon in the Tenth Judicial Circuit Court of Peoria County ("circuit court"). (D. 1 at 1, 15). He was sentenced to a term of thirty-eight years imprisonment for attempted murder and a concurrent term of seven years imprisonment for unlawful possession of a weapon. *Id.* at 1. The Illinois Third District Appellate Court ("Third District") affirmed Jackson's convictions in July 2004, and the Illinois Supreme Court denied his writ of certiorari on November 24, 2004. *Id.* at 2.

On March 28, 2005, Jackson timely filed his first petition for postconviction relief in the circuit court raising various claims of ineffective assistance of counsel as well as a claim of actual innocence

1

based upon newly discovered evidence, *i.e.* an affidavit from a new witness, Karl Nelms ("Nelms"), stating he saw the co-defendant had gun on the day of the shooting, not Petitioner. *Id.* at 4-5. The circuit court summarily dismissed the petition as frivolous and without merit in the first stage proceeding1. *Id.*

Petitioner appealed and the Third District reversed the dismissal stating: "The petition is sufficient to state the gist of a constitutional claim of actual innocence and defendant is entitled to an evidentiary hearing thereon." (D. 1-1 at 11-14; D. 6-9 at 14). One justice specially concurred to emphasize that the appellate court was not ruling on the substantive merits of the petition but rather was remanding for second stage proceedings. *Id.* at 15.

On September 24, 2007, the court entered an order setting the matter for second stage postconviction proceedings and appointed a public defender. (D. 6-18 at 1). During the next four years, Petitioner's counsel requested and received approximately thirty continuances. (D. 6-18; D. 6-19). On July 8, 2013, Petitioner filed a *pro se* motion for appointment of new counsel, alleging his postconviction petition had lain dormant since 2007. (D. 6-19 at 25-27). The circuit court ordered the case to be reassigned to a new attorney in the public defender's office. *Id.* at 29.

On November 8, 2013, Petitioner's newly appointed counsel advised the circuit court that the case was "ripe for a third-stage hearing" based on the order entered by the Third District, not the second stage, and the focus should be on getting Petitioner's witness, Karl Nelms, to testify on the actual

---

1 A postconviction petition proceeds through three stages. The first stage is summary dismissal, in which the trial court will determine whether the allegations allege the gist of a constitutional infirmity. Otherwise the trial court can summarily dismiss, and the petitioner can appeal the decision. The second stage is the motion to dismiss stage, in which the State can file a motion to dismiss because of a procedural defect or lack of substantial showing of a constitutional violation. The third stage is an evidentiary hearing. *See* 725 ILCS 5/122-1, *et. seq.*

innocence matter. *Id.* at 35-42. At that time, Petitioner's attorney requested a continuance to locate Nelms. *Id.* The next status conference was also continued at Petitioner's counsel's request, again to locate Nelms. (D. 6-20 at 1).

Following this hearing, Petitioner filed a *pro se* Motion to Clarify Objection, stating he disagreed with his counsel's interpretation of the Third District's order and believed all his postconviction claims were to advance to the second stage of proceedings. At a hearing on March 14, 2014, the circuit court advised Petitioner he could not proceed on his motion *pro se* and be represented by counsel at the same time. Petitioner decided to continue to be represented by his attorney. *Id.* Again Petitioner's counsel also informed the circuit court that he had not been able to locate Nelms and requested a general continuance. *Id.* at 8-9. Between March 2014 and March 2015, six more continuance were entered at Petitioner's counsel's request, three of them over the State's objection. *Id.* at 13-18. In March 2015, Petitioner fired appointed counsel and proceeded *pro se*. *Id.* at 18.

On May 15, 2015, the circuit court held a third stage evidentiary hearing, and Petitioner did not call any witnesses. *Id.* On that date, Petitioner also filed a *pro se* supplemental petition regarding his claim of innocence, stating he believed all the claims in his postconviction petition had survived after the Third District order. (D.6-26). The circuit court took the matter under advisement. On June 23, 2015, the circuit court filed a written order denying his postconviction petition in its entirety. (D. 6-27).

On July 20, 2015, Petition filed a Motion for Reconsideration, a briefing schedule was entered, and the State declined to respond. (D. 6-28; D. 6-32). The Motion was then set for hearing February 26, 2016. *Id.* Before the hearing, on February 22, 2016, Petitioner filed a Motion for Leave to File a Successive Petition for Post-Conviction Relief, the circuit court granted the Motion on May 6, 2016,

while Petitioner's Motion to Reconsider was still pending, and Petitioner filed his Successive Postconviction Petition on June 27, 2016. (D. 6-30; D. 6-31). On August 3, 2016, the circuit court set the Successive Postconviction Petition for a second stage hearing on September 23, 2016. (D. 6-20 at 23).

During this time, it appears matters were further delayed when Petitioner filed a Notice for Leave to File Late Appeal, which may have caused confusion over what court had jurisdiction of the case. On September 9, 2016, the Third District denied Petitioner's request, and a Mandate was filed with the circuit court on November 9, 2016. (*See* D. 6-32 at 2).   While the appellate issue was being addressed, the State failed to issue a writ for Petitioner's appearance at both the September and November 2016 circuit court hearings, although the reason writs were not issued is not clear from the record. (D. 6-30 at 23-25). On December 12, 2016, Petitioner filed a Motion to Withdraw *Pro Se* Motion for Reconsideration, and on February 17, 2017, the State filed a Motion to Dismiss Defendant's Second Postconviction Petition. (D. 6-33). On March 15, 2017, the circuit court denied the Second Postconviction Petition and Petition for Reconsideration. (D. 6-34).

On March 31, 2017, Petitioner filed a second appeal of his initial postconviction petition, alleging ineffective assistance of postconviction counsel and requested that the Third District reverse the denial of his successive postconviction petition.  (D. 1 at 24).  The Third District agreed and remanded his petition back to the circuit court on January 22, 2019. (D. 6-13).  The Third District's order noted that Petitioner was not foreclosed from reasserting the actual innocence claim raised in his successive postconviction petition on remand in an amended petition in the circuit court.  *Id.*

On March 13, 2019, the circuit court issued an Order Upon Remand, reappointing a new public defender to Petitioner's case, and instructed counsel to comply with Rule 651(c), which could include

4

amending the postconviction petition. (D. 1-1 at 31; D. 6-35). On April 5, 2019, the circuit court issued a General Order in Peoria County Postconviction Cases, which declared, among other things, that some postconviction cases could be continued for longer periods of time so that other postconviction cases could be targeted for preparation, review, and resolution. (D. 1-1 at 32). The order further stated that cases such as Petitioner's should take priority. *Id.* On that same date, Petitioner's new counsel requested a continuance to become more familiar with Petitioner's case. (D. 6-20 at 28).

On November 1, 2019, and February 7, 2020, Petitioner's counsel again requested continuances, and the case was set for hearing on June 26, 2020. (D. 6-20). On June 22, 2020, the State filed a Motion Dismiss (D. 6-22), which is currently set for hearing on September 25, 2020 (D. 6-20).

## PROCEDURAL HISTORY

On March 2, 2020, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 raising four grounds for relief: (1) a Fourteenth Amendment claim for violation of his procedural due process rights; (2) a Fourteenth Amendment claim for insufficient evidence to sustain a criminal conviction; (3) a claim for ineffective assistance of appellate counsel; and (4) a claim for ineffective assistance of trial counsel. (D. 1). On April 6, 2020, this Court entered an Order directing Respondent to file a response to his Petition. (D. 2). On June 25, 2020, Respondent filed a Motion to Dismiss due to Petitioner's failure to exhaust his habeas claims in state court, as there is still ongoing postconviction procedures scheduled. (D. 6). Petitioner filed a Reply on August 7, 2020. (D. 8). This Order follows.

## LEGAL STANDARD

"Federal habeas relief is available to state prisoners only after they have exhausted their claims in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999); 28 U.S.C. § 2254(b)(1)(A). "Exhaustion occurs when the petitioner has fairly presented his claim to the state courts by arguing

both the federal legal principles and the salient and operative facts of the claim, thereby giving the state courts a 'meaningful opportunity to pass upon the substance of the claims later presented in federal court.' " *Johnson v. Bryant*, 2007 WL 1521524, at *2 (N.D. Ill. May 21, 2007) (quoting *Chambers v. McCaughtry*, 264 F.3d 732, 737-38 (7th Cir. 2001)). "Exhausting all state remedies includes presenting each claim on appeal to the Illinois appellate court and in a petition to the Illinois Supreme Court for discretionary review." *Johnson*, 2007 WL 1521524, at *2 (citing *O'Sullivan*, 526 U.S. at 845).

However, the same statutory provision that mandates the exhaustion requirement also establishes two exceptions: "(1) if there is no state corrective process available; or (2) if circumstances exist which render such process ineffective to protect the prisoner's rights." 28 U.S.C. § 2254(b)(1)(B); *Sceifers v. Trigg*, 46 F.3d 701, 703 (7th Cir. 1995). The state of Illinois has made a corrective process available to its prisoners, and therefore, this Court must determine whether the delay experienced by Petitioner renders the state process ineffective within the meaning of § 2254(b). *See Jenkins v. Gramley,* 8 F.3d 505, 508 (7th Cir. 1993) ("Undue delay by a state court might show that available state remedies have been exhausted, permitting the federal court to proceed even while the state appeal was pending.").

## DISCUSSION

Federal habeas corpus law does not require a petitioner to exhaust state court remedies if there are "circumstances rendering [the state's] process ineffective to protect the rights of the prisoner." 28 U.S.C. § 2254(b). An inordinate state court delay may render a state court process ineffective. *Lowe v. Duckworth,* 663 F.2d 42, 43 (7th Cir. 2004) "Where state procedural snarls or obstacles preclude an effective state remedy against unconstitutional convictions, federal courts have no other choice but to

grant relief in [a] collateral proceeding." *Bartone v. United States,* 375 U.S. 52, 54 (1963). If the state court process is unduly delayed, that "might show that available state remedies have been exhausted, permitting the federal court to proceed even while the state appeal was pending." *Jenkins v. Gramley,* 8 F. 3d 505, 508 (7th Cir. 1993).

In determining whether a delay in state court is "inordinate," a threshold question is whether the state is responsible for the delay. If a delay cannot be attributed to the state, then the state's process is not considered ineffective, no matter how long the delay may be. *See Sceifers v. Trigg,* 46 F.3d 701, 703-04 (7th Cir. 1995). In *Lane v. Richards,* the Seventh Circuit found that the reason for the delay was no mystery, so a hearing to explore that reason was not necessary – petitioner's state case came to a halt because his attorney had asked for a continuance. *Id.* The court went on to state that if petitioner's attorney spoke on his behalf, then he is in no position to protest that the state is unwilling to decide his case. *Id.* "Under the common law a lawyer speaks for her client," and therefore, the request and thus the delay cannot be attributed to his adversary. *Id.* Since petitioner's counsel, and not the state, specifically caused the delay, he was precluded from claiming the state process was ineffective and the district court's dismissal of the federal habeas petition for failure to exhaust state remedies was appropriate.

Similarly, in *Sceifers v. Trigg,* the Seventh Circuit found that petitioner's eleven-year delay had been caused partially by petitioner's own actions and partially by "the uninspired performance of his post-conviction counsel." 46 F.3d at 704. In light of *Lane,* the court held the delay could not be attributed to the state for purposes of rendering the state process ineffective under § 2254(b) and dismissed the cause, concluding petitioner must exhaust his state remedies before bringing a federal habeas action in federal court. *Id.*

7

After carefully examining the record in the case at bar, this Court finds Petitioner's fifteen-year delay has been primarily caused by the actions of his attorneys, and not by the state. Between October 2007 and March 2015, forty-seven continuances orders were entered. (D. 6-18; D. 6-19; D. 6-20). Out of the forty-seven continuances, the circuit court record makes clear that Petitioner's attorney requested thirty-seven and the state requested only two. *Id.* Frustrated with the eight-year delay, Petitioner finally moved to proceed *pro se* in March 2015, and the circuit court had a timely hearing on his postconviction petition two months later and entered a final order in June 2015.

Between the end of 2015 and 2017, the case was further complicated and delayed by motions to reconsider and supplemental postconviction motions that were filed by Petitioner while he concurrently attempted to appeal the case. Before his Motion to Reconsider could be fully briefed and heard, Petitioner seemed to abandon the Motion and attempted to proceed with a Second Postconviction Petition. During this time, the Court notes a two or three-month delay that may be attributable to the State between September and November 2016, when the State failed to issue a writ for Petitioner to attend the hearings, it is not clear if the State simply forgot to issue the writ, did not do so because there was a pending appeal, or because Petitioner appeared to have abandoned his Motion to Reconsider when he filed a Second Postconviction Petition. Either way, the circuit court ultimately entered an order dismissing both Motions in March 2017, and Third District then remanded Petitioner's claims for second stage proceedings in January 2019.

The Court must also consider whether the case has been proceeding at a normal pace since January 2019, and if not, whether those delays are attributable to the State. The Court finds that the delays do not appear to be the State's fault. According to the record, Petitioner's counsel sought continuances on April 5, 2019, November 1, 2019, and February 7, 2020. (D. 6-20). While awaiting

the next court-ordered hearing date on June 26, 2020, the State filed a Motion to Dismiss, which is set for hearing on September 25, 2020, which is in less than two weeks. Under these circumstances, this Court cannot find the primary cause of the delays in the circuit court to be attributable to the State.

## CONCLUSION

For the reasons stated above, Respondent Frank Lawrence's [6] Motion to Dismiss is GRANTED. Petitioner's claims are DISMISSED WITHOUT PREJUDICE, and the Clerk of Court is directed to close this case.

Entered on September 16, 2020.

                                                  s/ Michael M. Mihm
                                                  Michael M. Mihm
                                                  United States District Judge